## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| AMERICAN FIRE AND CASUALTY COMPANY and THE OHIO CASUALTY INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>CLEANING UP, LLC and ESMERALDA PINEDA,<br><br>Defendants. | )<br>)<br>)<br>) Case No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, plaintiff American Fire and Casualty Company ("American Fire") and plaintiff The Ohio Casualty Insurance Company ("Ohio Casualty"), by and through their attorneys of record, seek a judgment declaring that certain liability insurance policies issued by them to defendant Cleaning Up, LLC ("Cleaning Up") provide no coverage for a claim against it in a lawsuit brought by defendant Esmeralda Pineda ("Pineda") and, in support of their request for such judgment, further state and allege as follows:

### PARTIES

1.     American Fire is a New Hampshire insurance company with its principal place of business in Massachusetts.  American Fire is, accordingly, a citizen of New Hampshire and Massachusetts.

2.      Ohio Casualty is a New Hampshire insurance company with its principal place of business in Massachusetts.  Ohio Casualty is, accordingly, a citizen of New Hampshire and Massachusetts.

3.      Cleaning Up is a Kansas limited liability company with its principal place of business in Kansas.  It has two members, Melanie McGreevy and Cerena Dvorak, each of whom is a natural person and a citizen and resident of Kansas.

4.      Pineda is a natural person and, upon information and belief, domiciled in Missouri.

## JURISDICTION AND VENUE

5.      Jurisdiction is proper pursuant to 28 U.S.C. § 1332, because this dispute is between citizens of different states, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(a), because a substantial part of the events giving rise to this dispute occurred in this District.

## THE UNDERLYING LAWSUIT

7.      On or around August 7, 2020, Pineda filed in the Civil Court Department of the District Court of Johnson County, Kansas (the "Civil Court") a civil action, *Esmeralda Pineda v. Federico Arenas, et al.*, Case No. 20CV3316 (the "Underlying Lawsuit"), against Cleaning Up as well as one Federico Arenas and his employer, Cleaning Up customer SPX Cooling Technologies, Inc. ("SPX").

8.      The Petition for Damages in the Underlying Lawsuit (the "Underlying-Lawsuit Petition") alleges that Pineda was employed by Cleaning Up and was assigned to clean an SPX building in Olathe, Kansas.  (A copy of the Underlying-Lawsuit Petition is attached hereto as Exhibit A.)

9.     The Underlying-Lawsuit Petition further alleges that Arenas began sexually harassing Pineda in December of 2019. (Exhibit A, ¶ 9.)

10.     The Underlying-Lawsuit Petition further alleges that, "[o]n or about February 27, 2020, [Pineda] reported the harassment to her supervisor at Cleaning Up," one Carlos Bugosen, that neither he "nor anyone else at Cleaning Up[ ] took any action to protect [her] from . . . Arenas" and that Bugosen "instead instructed [Pineda] herself to tell . . . Arenas to stop harassing her." (Exhibit A, ¶¶ 11, 12.)

11.     The Underlying-Lawsuit Petition further alleges that, while cleaning SPX's building on March 4, 2020 and March 5, 2020, Pineda was sexually assaulted by Arenas.

12.     The Underlying-Lawsuit Petition sets forth against Cleaning Up a cause of action for direct negligence, alleging, *inter alia*, that "Cleaning Up failed to have adequate policies and procedures to prevent sexual misconduct and sexual harassment" and "failed to train its supervisors and employees regarding reporting sexual misconduct and sexual harassment." (Exhibit A, ¶ 32.)

13.     After answering the Underlying-Lawsuit Petition, Cleaning Up filed in the Underlying Lawsuit a motion for summary judgment principally on the grounds that Pineda's claim against it was barred by the exclusive remedy provisions of the Kansas Workers Compensation Act (the "KWCA").

14.     To avoid allowance of such motion, Pineda filed an opposition thereto taking the position that her claimed damages were for non-physical injuries. (A copy of Plaintiff's Memorandum in Opposition to Defendant Cleaning Up, LLC's Motion for Summary Judgment is attached as Exhibit B.)

15.     Pineda's opposition also expressly disavows alleging any bodily injury or seeking any damages for such injury, stating:

> Her claim seeks damages for the emotional distress she suffered as a result of Cleaning Up's failure to exercise reasonable care when she reported that SPX employee Federico Arenas was sexually harassing her, culminating in two incidents in which she was subjected to offensive touchings, batteries, by him.  Offensive touchings do not, as a matter of law, constitute *physical* "personal injury" as required to bring her within KWCA exclusivity.  Nor are the injuries for which Plaintiff is seeking to recover of a physical nature.  Instead, they are nonphysical, i.e., extreme emotional distress, fear, and anxiety, etc.

(Exhibit B, p. 1 (emphasis in original).)

16.     Pineda's opposition also cites cases for the proposition that "purely mental disorders or injuries" are not within the exclusive remedy provision of the KWCA.  (Exhibit B, p. 12.)

17.     Pineda's opposition also argues that the assault by Arenas "at worst, caused only bruising, which is neither physically injurious nor the injuries for which Plaintiff seeks to recover." (Exhibit B, p. 13.)

18.     Pineda's opposition also distinguishes between an offensive physical *contact*, which she acknowledges enduring, and physical *injury*, which she denies sustaining.  (Exhibit B, p. 16.)

19.     As respects the nature of her claim against Cleaning Up, Pineda's opposition also states:

> The gravamen of this tort claim is *non-physical*; its elements do not require Plaintiff to prove any physical injury.  A plain reading of Plaintiff's allegations in her Petition reveals that her complaints focus on Defendant's non-physical conduct – including repeatedly talking to Plaintiff about sex, claiming that she was his, and crowding her in inappropriate ways.

(Exhibit B, p. 16 (emphasis added).)

20.     Pineda's opposition also takes the position that her claim against Cleaning Up was for employment-related duties, stating: "Cleaning Up owed a duty to Plaintiff as her employer to not expose her" to Arenas.  (Exhibit B, p. 1.)

4

21.     Relatedly, Pineda's opposition also states that Cleaning Up owed her a duty to prevent "further harassment at the hands of Defendant Arena [sic]" and that Pineda had complained to Cleaning Up regarding harassment.  (Exhibit B, p. 2.)

22.     Pineda's opposition also argues that she had experienced "months of sexual harassment that culminated in two incidents of offensive physical contacts."  (Exhibit B, p. 13.)

23.     Pineda's opposition also outlines her theories against Cleaning Up as "failing to transfer Plaintiff to an assignment where she would not be exposed to any risk of harm from [Arenas]; failing to institute adequate policies and procedures to report sexual misconduct and harassment; and failing to train its supervisors on preventing sexual misconduct and harassment." (Exhibit B, p. 16.)

24.     Adopting the arguments in Pineda's opposition, the Civil Court has denied Cleaning Up's motion for summary judgment in the Underlying Lawsuit.

25.     The Civil Court's April 15, 2022 order denying Cleaning Up's summary judgment motion concludes:  "Here, [Pineda], cognizant of this case law, has made clear she does not claim damages for any physical injury."  (A copy of the Order on Motions for Summary Judgment, is attached as Exhibit C, p. 21.)

26.     Such order also notes that "no party filed the requisite report of injury associated with a workplace injury" under the KWCA and "[m]ost likely that is because there was no work injury."  (Exhibit C, p. 21.)

27.     Such order is premised on cases holding that a civil claim for "emotional distress damages unrelated to physical injury" is not barred by the exclusive remedy provisions of the KWCA.  (Exhibit C, p. 21.)

28.     Such order includes a ruling that such a claim for emotional distress damages unrelated to physical injury is being asserted by Pineda against Cleaning Up in the Underlying Lawsuit.  (Exhibit C, p. 21.)

29.     Such order also includes a ruling that Pineda "was within ambit of foreseeable of harm of persons for persons complaining of unrectified harassment."  (Exhibit C, p. 22.)

30.     Such order also includes a finding that Cleaning Up had "knowledge of improper sexual harassment by a specific individual that, if competently report[ed], should have led to some significant discipline and possible reassignment of the plaintiff or even the perpetrator."  (Exhibit C, p. 22.)

31.     Such order also includes a finding that "Cleaning Up recognized that harassment at the workplace could stem from others on the premises."  (Exhibit C, pp. 23-24.)

32.     Pursuant to a reservation of rights to disclaim coverage, American Fire has been providing a defense to Cleaning Up in the Underlying Lawsuit.

33.     A real and present case and controversy exists regarding whether either of the plaintiffs' respective insurance policies affords any coverage for Pineda's claim against Cleaning Up.

34.     The amount in dispute exceeds $75,000, exclusive of interest and costs.

## THE INSURANCE POLICIES

### The Workers Compensation and Employers Liability Insurance Policy

35.     American Fire issued to Cleaning Up a Workers Compensation and Employers Liability Insurance Policy, number XWA (20) 57 02 56 90, with a policy period of November 28, 2019 to November 28, 2020 (the "WC/EL Policy"). (A copy of the WC/EL Policy is attached as Exhibit D.)

36.     Part One of the WC/EL Policy affords workers compensation insurance in Kansas and Missouri pursuant to each state's respective workers' compensation law and is not at issue here.

37.     Part Two of the WC/EL Policy affords employers liability insurance.

38.     Part Two of the WC/EL Policy includes a set of insuring agreements providing in part as follows:

**A. How This Insurance Applies**

This employers liability insurance applies to bodily injury by accident or bodily injury by disease.  Bodily injury includes resulting death.

**1.** The bodily injury must arise out of and in the course of the injured employee's employment by you. . . .

**B. We Will Pay**

We will pay all sums that you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance. . . .

**D. We Will Defend**

We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance.  We have the right to investigate and settle these claims, proceedings and suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. . . .

39.     Part Two of the WC/EL Policy also includes a set of exclusions providing in part as follows:

**C. Exclusions**

This insurance does not cover . . . [:]

**4.** Any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law . . . ;

**7.** Damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions . . . .

## The Commercial Umbrella Policy

40.     Ohio Casualty issued to Cleaning Up a Commercial Umbrella Insurance Policy, number USO (20) 57 02 56 90, with a policy period of November 28, 2019 to November 28, 2020 (the "Umbrella Policy"). (A copy of the Umbrella Policy is attached as Exhibit E.)

41.     The Umbrella Policy includes a set of insuring agreements providing in part as follows:

### I. COVERAGE

**A.** We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. The amount we will pay for damages is limited as described in the **INSURING AGREEMENT, SECTION II. LIMITS OF INSURANCE**. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SECTION III. DEFENSE**.

**B.** This insurance applies to:

    **1.** "Bodily injury" or "property damage" only if:

        **a.** The "bodily injury" or "property damage" occurs during the Policy Period; and

        **b.** The "bodily injury" or "property damage" is caused by an "occurrence" happening anywhere . . . .

### II. LIMITS OF INSURANCE . . . .

**G. Retained Limit**

We will be liable only for that portion of damages, subject to the Each Occurrence Limit stated in the Declarations, in excess of the "retained limit," which is the greater of:

    **1.** the total amounts stated as the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other insurance providing coverage to the "Insured" during the Policy Period; or

    **2.** the amount stated in the Declarations as Self-Insured Retention as a result of any one "occurrence" not covered by the underlying policies listed in the Schedule of Underlying Insurance nor by any other insurance providing coverage to the "Insured" during the Policy Period;

and then up to an amount not exceeding the Each Occurrence Limit as stated in the Declarations. . . .

## III. DEFENSE

    **A.**  We will have the right and duty to investigate any "claim" and defend any "suit" seeking damages covered by the terms and conditions of the policy when:

        **1.**  The applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other insurance providing coverage to the "Insured" have been exhausted by actual payment of "claims" for any "occurrence" or "offense" to which this policy applies; or

        **2.**  Damages are sought for any one "occurrence" or "offense" which is covered by this policy but not covered by any underlying policies listed in the Schedule of Underlying Insurance or any other insurance providing coverage to the "Insured".

42.    The Umbrella Policy also includes a set of definitions providing in part as follows:

## V. DEFINITIONS

    **C.**  "Bodily injury" means physical injury, sickness, or disease, including death of a person.  "Bodily injury" also means mental injury, mental anguish, humiliation, or shock if directly resulting from physical injury, sickness, or disease to that person.  "Bodily injury" does not include "bodily injury" arising out of "personal and advertising injury". . . .

    **J.**  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

    **K.**  "Personal injury" means injury other than "bodily injury" arising out of one or more of the following offenses:

        **1.**  False arrest, detention or imprisonment;

        **2.**  Malicious prosecution;

        **3.**  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of the owner, landlord or lessor;

        **4.**  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

        **5.**  Oral or written publication, in any manner, of material that violates a person's right of privacy;

        **6.**  The use of another's advertising idea in your "advertisement"; or

**7.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

"Personal and advertising injury" includes "consequential bodily injury". . . .

**O.** "Underlying insurance" means the insurance coverage provided under policies shown in the Schedule of Underlying Insurance, or any additional policies agreed to by us in writing.

43.     The Umbrella Policy also includes a set of exclusions providing in part as follows:

## IV. EXCLUSIONS

This insurance does not apply to:

**A.** "Bodily injury" or "property damage" expected or intended from the standpoint of the "Insured."   This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property. . . .

**B.** Any obligation of the "Insured" under a Workers Compensation, Unemployment Compensation or Disability Benefits Law, or under any similar law, regulation or ordinance. . . .

**O.** "Bodily injury", "personal injury" or "advertising injury" to:

   **1.** A person arising out of any:

      **a.** Refusal to employ that person;

      **b.** Termination of that person's employment; or

      **c.** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person . . . .

This exclusion applies:

   **1.** Whether the injury-causing event described in Paragraphs 1.a., 1.b. or 1.c. above occurs before employment, during employment or after employment of that person;

   **2.** Whether the insured may be liable as an employer or in any other capacity; and

   **3.** To any obligation to share damages with or repay someone else who must pay damages because of the injury. . . .

**Q.** The following Items **1.** through **4.**, except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy . . . [:]

   **4.** "Bodily injury" to:

    **a.** an employee of any "Insured" arising out of and in the course of:

        **i.** employment by any "Insured"; or

        **ii.** performing duties related to the conduct of any "Insured's" business . . . .

This exclusion applies:

**a.** whether any "Insured" may be liable as an employer or in any other capacity; and

**b.** to any obligation to share damages with or repay someone else who must pay damages because of the injury.

### COUNT I – THE WC/EL POLICY PROVIDES NO COVERAGE

44. American Fire realleges and incorporates paragraphs 1-43.

45. In Part Two thereof and as set forth more fully therein, the WC/EL Policy affords coverage only for sums that Cleaning Up legally must pay "as damages because of bodily injury to [its] employees, provided the bodily injury is covered by this Employers Liability Insurance."

46. In the Underlying Lawsuit, Pineda does not seek to recover damages from Cleaning Up for any "bodily injury" to her within the meaning of the WC/EL Policy.

47. In the Underlying Lawsuit, no judgment for Pineda against Cleaning Up can be for "damages because of bodily injury" to her within the meaning of the WC/EL Policy.

48. Additionally, any WC/EL Policy coverage for the claim of Pineda against Cleaning Up in the Underlying Lawsuit is eliminated by an applicable exclusion.

49. In Part Two thereof, the WC/EL Policy includes an exclusion for damages arising out of employment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, or discrimination.

50. Pineda's claim against Cleaning Up in the Underlying Lawsuit is for damages allegedly arising from such employment-related practices, policies, acts or omissions as described in such exclusion.

51.     The WC/EL Policy provides in part: "We have no duty to defend a claim, proceeding or suit that is not covered by this insurance."

52.     Because the WC/EL Policy does not cover Pineda's claim against Cleaning Up therein, American Fire has no duty to defend Cleaning Up in the Underlying Lawsuit.

WHEREFORE, pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, American Fire and Casualty Company requests that the Court enter judgment (1) declaring that the WC/EL Policy provides no liability coverage for the claim of Esmeralda Pineda against Cleaning Up, LLC and that American Fire and Casualty Company is thus entitled to discontinue its defense of Cleaning Up, LLC in the Underlying Lawsuit, and (2) awarding American Fire and Casualty Company such other and further relief as is just and proper.

### COUNT II – THE UMBRELLA POLICY PROVIDES NO COVERAGE

53.     Ohio Casualty realleges and incorporates paragraphs 1-52.

54.     The Umbrella Policy affords coverage only for certain sums that Cleaning Up "becomes legally obligated to pay . . . because of 'bodily injury' . . . or 'personal and advertising injury' to which this insurance applies[,]" with "bodily injury" meaning physical injury and also meaning emotional distress only insofar as it directly results from physical injury, and with "personal and advertising injury" meaning only injury arising out of one or more of certain enumerated offenses.

55.     In the Underlying Lawsuit, Pineda does not seek to recover damages from Cleaning Up for any "bodily injury" to her within the meaning of the Umbrella Policy.

56.     In the Underlying Lawsuit, no judgment for Pineda against Cleaning Up can be for damages for "bodily injury" to her within the meaning of the Umbrella Policy.

57.     In the Underlying Lawsuit, Pineda does not seek to recover damages from Cleaning Up for any "personal injury" to her within the meaning of the Umbrella Policy.

58.     In the Underlying Lawsuit, no judgment for Pineda against Cleaning Up can be for damages for "personal and advertising injury" to her within the meaning of the Umbrella Policy.

59.     Additionally, any Umbrella Policy coverage for the claim of Pineda against Cleaning Up is eliminated by an applicable exclusion.

60.     The Umbrella Policy includes an exclusion for employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, or discrimination.

61.     Pineda's claim against Cleaning Up in the Underlying Lawsuit is for damages allegedly arising from such employment-related practices, policies, acts or omissions as described in such exclusion.

62.     The Umbrella Policy, by its terms, imposes no duty to defend in these circumstances.

WHEREFORE, pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, The Ohio Casualty Insurance Company requests that the Court enter its judgment (1) declaring that the Umbrella Policy provides no liability coverage for the claim of Esmeralda Pineda against Cleaning Up, LLC in the Underlying Lawsuit, and (2) awarding The Ohio Casualty Insurance Company such other and further relief as is just and proper.

WALLACE SAUNDERS, CHTD.

BY:  /s/ Angela M. Clark

Angela M. Clark                    KS #21141
John L. Kellogg                    KS #18613
10111 W. 87th Street
Overland Park, Kansas 66212
(913) 888-1000    FAX (913) 888-1065
aclark@wallacesaunders.com
jkellogg@wallacesaunders.com

ATTORNEYS FOR PLAINTIFFS

102287521.v1